United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 3, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-10950
Summary Calendar

KIMBERLY N TAYLOR; ERIKA SQUARE,

Plaintiffs-Appellants,

versus

NICKELS AND DIMES INC, Etc; ET AL,

Defendants,

NICKELS AND DIMES INC, doing business as Tilt at Dallas Alley

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(3:00-CV-1461)

Before JONES, STEWART and DENNIS, Circuit Judges

PER CURIAM:[*]

In this action seeking damages for sexual harassment and retaliation in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), Kimberly Taylor ("Taylor") and Erika Square

---

[*] Pursuant to 5ᵀᴴ CɪR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the
limited circumstances set forth in 5ᵀᴴ CɪR. R. 47.5.4.

("Square") appeal from the district court's grant of summary judgment in favor of their former employer, Nickels and Dimes, Inc. For essentially the reasons contained in the district court's comprehensive opinions, we affirm.[1]

In July 2000, Taylor and Square (collectively, "Plaintiffs") filed this lawsuit against Nickels and Dimes and James Love ("Love"), their immediate supervisor, (collectively, "Defendants") alleging that Nickels and Dimes discriminated and retaliated against them on the basis of their sex in violation of Title VII and the Texas Commission on Human Rights Act. Specifically, the Plaintiffs alleged that Love sexually harassed them for approximately five months which included Love's inappropriate remarks and physical behavior toward them. The Plaintiffs further alleged that Love retaliated against the Plaintiffs by embarking on a campaign of terror against them, including threatening them with physical assault and altering their working conditions. The Plaintiffs also asserted that Nickels and Dimes constructively discharged Taylor and Square.

Nickels and Dimes owns and operates an arcade known as "Tilt" located in Dallas, Texas. Nickels and Dimes hired Square on October 25, 1998, and Love on April 1, 1998. At all times material herein, Love was Square's supervisor. Square contends Love sexually harassed her during the entire period of her employment with Nickels and Dimes. Specifically, Square states that Love grabbed her buttocks on four occasions, and made a number of inappropriate comments, such as "you have a big ass" and "I'm gonna [sic] get me some of that." She further states that Love invited her to have sex with him, and suggested that she might find work as a stripper in a club owned by one of his associates. Square also avers that prior to her complaint, Love denied her certain benefits

---

[1]See Taylor v. Nickels and Dimes, Inc. No. 3:00-CV-1461, 2002 WL 1827657 (N.D. Tex August 7, 2002); Taylor v. Nickels and Dimes, Inc. No. 3:00-CV-1461, 2002 WL 1827659 (N.D. Tex August 7, 2002).

of employment by requiring her to postpone restroom breaks, preventing her from leaving work on time, and assigning her cleaning duties. Finally, Square avers that Love reached into her apron and grabbed her crotch area in late February 1999. Throughout this period, Love threatened her and told her not to report his conduct to upper management.

On March 31, 1999, Square states Love ushered her into a back room, closed the door, and refused to let her out. Square further states that Love threatened her with clenched fists and struck her in the breast. Nickels and Dimes contends that Square and Love engaged in an argument after Love instructed her to postpone taking a break until someone could cover for her. Rather than comply with his request, Square yelled at Love and refused to follow his instructions. Following Square's insubordination, Nickels and Dimes Assistant General Manager, Dakwanda Tate ("Tate") terminated Square's employment.

Later that day, on March 31, 1999, Square complained to Michelle Pizio ("Pizio"), Human Resources and Payroll Manager, that Love had sexually harassed her by touching her buttocks and by placing his hand down her apron. In response to these allegations, Pizio reinstated Square's employment, placed her on paid administrative leave until April 6, 1999, and immediately investigated her complaint. Pizio instructed Love not to retaliate against Square, not to have any contact with her, and, if necessary, to have another supervisor interact with Square during her shift. Pizio also rescheduled Square's work shift so that it would not substantially overlap with Love's shift, and arranged for someone other than Love to supervise Square during those periods their shifts did overlap.

Square worked her shift on April 6, 1999, and worked approximately one hour the following day. On April 7, 1999, Pizio interviewed a number of witnesses at Nickels and Dimes concerning the allegations Square made against Love. According to Square, a coworker informed her that Pizio

3

had "asked a lot of questions" and was "watching [her] every move." Square further states that Love was present at work upon her return and had threatened her with injury. Based on these comments and threats, Square abandoned her employment.

Nickels and Dimes hired Taylor on September 20, 1996. At all time material herein, Love was the Shift Manager and supervised Taylor. Taylor states that Love began a campaign of sexual harassment beginning sometime after July 7, 1998, and that continued thereafter on a weekly basis through October 29, 1998. Specifically, Taylor avers Love told her that he wanted to "take her to the room," "take her to a motel," "have sex with [her]," and "eat her out." Taylor further states that Love often attempted to grab her buttocks, and that on at least one occasion, succeeded.

At some point before October 1998, Taylor reported these incidents to the General Manager, Okey Ogwumike ("Ogwumike"), and to the Assistant General Manager, Jeff Wright ("Wright"). Wright instructed Taylor to call Pizio. On October 29, 1998, Taylor reported the sexual harassment to Pizio. In response, Pizio immediately investigated the allegations and conducted phone interviews with Taylor, Love, Ogwumike, Wright, and a number of other employees. Based on her investigation, Pizio determined that both Taylor and Love behaved inappropriately by discussing matters of a sexual nature with fellow employees, and by touching or hugging them. Pizio instructed Love not to engage in any such conduct with coworkers, to avoid any further contact with Taylor, and if necessary, to have another supervisor interact with Taylor during Love's shifts. Pizio also caused Taylor and Love to work in different locations of the arcade when both worked on the same shift. Finally, Pizio counseled Ogwumike, Wright, and Love not to retaliate against Taylor for making her complaint.

Taylor concedes that she did not experience any further sexual harassment after she complained to Pizio; however, she states that Love threatened her with imminent bodily injury after

4

she had complained. Taylor testified in her deposition that Love threatened her at "different times" in 1998, and only "a little bit" in 1999. Taylor further states that between October 1998 and August 1999, her supervisors watched her more closely, denied her work and restroom breaks, assigned her extra duties, prevented her from taking leave on several occasions, and finally, that Ogwumike threatened to demote her. Taylor believes these actions were in retaliation for the complaint she filed against the Defendants for sexual harassment.

In October 2001, Nickels and Dimes moved for summary judgment claiming, inter alia, that (1) Nickels and Dimes' prompt remedial action following the Plaintiffs' internal complaint bars any recovery, (2) the Plaintiffs did not suffer any adverse employment actions, and (3) Nickels and Dimes did not constructively discharge the Plaintiffs. On August 7, 2002, the district court granted summary judgment to Nickels and Dimes on Taylor's and Square's Title VII claims.

The Plaintiffs appeal arguing that in the totality of the circumstances, they suffered an abusive working environment based on their sex. According to Taylor, she presented evidence that Love told her that he wanted to perform various sexual acts on her. During that same time, Taylor alleges that Love attempted to grab her buttocks and on at least one occasion succeeded in doing so. According to Taylor's deposition, she resigned from her employment with Nickels and Dimes due to unrelated health reasons. Square alleges that Love grabbed her buttocks four times and her vagina once and that he made sexual comments to her. Square argues that when Nickels and Dimes terminated her on March 31, 1999, that constituted an adverse employment action. Nickels and Dimes, however, dissolved the termination and instead placed Square on paid administrative leave until April 6, 1999. Square further argues that her resignation on April 7, 1999 constituted a constructive discharge.

In separate memorandum opinions, the district court concluded that neither Taylor nor Square produced evidence that they suffered a tangible employment action by Nickels and Dimes to establish prima facie cases of sexual harassment. The district court found that no constructive discharge took place because a reasonable employee would not have felt compelled to resign under such conditions. In Square's case, the district court determined that "the facts demonstrate that Square resigned because of the threats made by Love, and because she believed she would be terminated. Nothing in the record substantiates Square's belief that Nickels and Dimes would terminate her." In Taylor's case, the district court concluded that once Taylor reported the harassment all inappropriate sexual behavior ceased approximately ten months before she resigned, and therefore, there was no constructive discharge. The district court further found that Nickels and Dimes had produced sufficient evidence to establish an affirmative defense under Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). The district court also determined that the Plaintiffs' retaliation claims fail because neither Square nor Taylor had demonstrated constructive discharge or that they otherwise experienced adverse employment actions.

Our review of the record confirms the findings of the district court regarding the claims of Taylor and Square. For the reasons thoroughly explained in the district court's Memorandum Opinions and Orders, we AFFIRM.

AFFIRMED.